

FILED

Jun 30 2026, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Perdue Farms Inc.,

*Appellant-Plaintiff*

v.

L&B Transport, LLC, et al,

*Appellees-Defendants*

---

June 30, 2026

Court of Appeals Case No.
25A-PL-1745

Appeal from the Daviess Circuit Court

The Honorable Gregory A. Smith, Judge

Trial Court Cause No.
14C01-2008-PL-491

---

**Opinion by Judge Pyle**
Judges Bradford and Kenworthy concur.

**Pyle, Judge.**

## Statement of the Case

In 2020, Perdue Farms, Inc. ("Perdue") filed an action against U.S. Security Associates, Inc. ("U.S. Security") and three of its employees—Jennifer Freeman, Brian Hill, and Carl Nelson (collectively, "the Employees")—for damages arising from a chemical reaction that occurred at Perdue's plant. A delivery driver arrived unexpectedly. He failed to disclose the true nature of his load, and the Employees did not check his bill of lading. The driver deposited the wrong chemical into a bleach tank, which caused a chemical reaction that sent fog and foam into the plant and damaged Perdue's equipment.

A forum-selection clause in U.S. Security's contract with Perdue, which required that disputes be litigated in Maryland, led to U.S. Security's dismissal from the lawsuit. The Employees, who were not parties to that contract, remained as parties to the lawsuit until they sought and obtained judgment on the pleadings on the ground that they could not be sued in tort for negligently performing their employer's contractual obligations.

Perdue now brings this interlocutory appeal, arguing that the trial court: (1) erred by granting the Employees' motion for judgment on the pleadings on Perdue's negligence claims; and (2) abused its discretion by denying Perdue's alternative request for leave to amend its complaint against the Employees. Concluding that the trial court properly granted the Employees' motion for

judgment on the pleadings and did not abuse its discretion by denying Perdue's request to amend its complaint, we affirm the trial court's judgment.

[4] We affirm.

## Issues

[5] Perdue raises three issues, which we consolidate and restate as:

1. Whether the trial court erred in granting the Employees' motion for judgment on the pleadings on Perdue's negligence claims.

2. Whether the trial court abused its discretion in denying Perdue's alternative request for leave to amend its complaint against the Employees.

## Facts

[6] Perdue owns and operates a poultry-processing plant ("the Plant") in Daviess County, Washington, Indiana. U.S. Security agreed to provide security services at the Plant, pursuant to a written service agreement ("Service Agreement") that Perdue and U.S. Security had entered into in September 2015. The Service Agreement obligated U.S. Security to "furnish unarmed, uniformed security officers . . . to prevent theft, fire and vandalism and control foot and vehicular traffic in accordance with the job descriptions and specifications in force at each of Perdue's facilities." (App. Vol. 2 at 180). Further, the Service Agreement provided that U.S. Security would "perform the

Services through able, qualified, and trained personnel . . . who shall be employees of, and responsible solely to," U.S. Security. (App. Vol. 2 at 70).

[7] On August 26, 2018, William Richardson ("Richardson"), a driver for L&B Transport, LLC ("L&B"), arrived unannounced at the Plant's security gate outside of normal delivery hours. Richardson incorrectly told the Employees, who were guarding the Plant at that time, that he was delivering bleach when, in fact, he was transporting aluminum chloride, a hazardous material. The Employees failed to inspect Richardson's bill of lading to verify the load, and they allowed him to proceed through the security gate and directed him to the bleach tank to begin unloading the material he had transported. When Richardson connected his truck to the tank and discharged the aluminum chloride, it mixed with the bleach and produced a chemical reaction that released fog and foam into multiple rooms in the Plant. The reaction damaged the Plant's equipment, forced a multi-day shutdown to clean and salvage the equipment, and caused approximately $1.29 million in damages.

[8] In August 2020, Perdue sued L&B, Richardson, U.S. Security, the Employees, and others. Relevant to this appeal, Perdue's First Amended Complaint ("Complaint") brought claims of negligence, negligent hiring, and breach of contract against U.S. Security.[1] Perdue's negligence claim against the Employees alleged that they "owed [Perdue] a duty to exercise reasonable care

---

[1] Perdue filed its original complaint on August 21, 2020. On May 12, 2021, Perdue sought leave to file a "First Amended Complaint," which the trial court granted on May 14, 2021. (App. Vol. 2 at 10).

when allowing individuals, including delivery drivers, to enter the Plant[,]" and had "breached that duty when they failed to request and review . . . Richardson's bill of lading before allowing him to enter the Plant." (App. Vol. 2 at 53). Further, Perdue alleged that the "acts and omissions of [the Employees] while acting in the course and scope of their employment with U.S. Security, breached the duty of care owed to" Perdue. (App. Vol. 2 at 54).

[9] U.S. Security and the Employees moved to dismiss Perdue's Complaint for improper venue, relying on a forum-selection clause in the Service Agreement, which designated a federal court in Maryland as the proper venue for disputes arising out of the agreement. After a divided panel of this Court held the clause unenforceable,[2] our Supreme Court granted transfer. Our Supreme Court held that "the forum-selection clause applie[d] only to Perdue's claims against U.S. Security[,]" and declined to apply the clause to Perdue's claims against the Employees. *Perdue Farms v. L&B Transp., LLC*, 239 N.E.3d 842, 845, 851 (Ind. 2024). Our Supreme Court noted that the Employees "(unlike their employer) are not parties to the forum-selection clause" and "are not in privity with their employer." *Id.* at 845. Thus, Perdue's claims against the Employees (and L&B and Richardson, too) remained in the Daviess Circuit Court.[3]

---

[2] *See Perdue Farms, Inc. v. L&B Transp., LLC*, 217 N.E.3d 1267 (Ind. Ct. App. 2023), *vacated*.

[3] Perdue's claims against U.S. Security proceeded in Maryland.

[10] On remand, the Employees moved for judgment on the pleadings under Indiana Trial Rule 12(C), contending that in light of our Supreme Court's decision in *Greg Allen Construction v. Estelle*, 798 N.E.2d 171 (Ind. 2003), the Employees could not be held personally liable in tort for negligently performing U.S. Security's contractual obligations.[4] In its response, Perdue argued that the Employees had instead relied upon Indiana's economic loss doctrine without "actually identify[ing] it.[5] App. Vol. 2 at 199. Applying the applicability of the economic loss doctrine, Perdue contends that the doctrine did not bar its claims against the Employees because the alleged negligence had caused damage to "other property" and because the Employees lacked contractual privity with Perdue. (App. Vol. 2 at 200). Alternatively, Perdue sought leave to amend its Complaint to address any deficiencies in its economic loss doctrine arguments. In their reply, the Employees maintained that they had based their arguments on the reasoning in *Greg Allen*—that is, that no tort claim lies against an agent where the duty allegedly breached arises solely from the principal's contract— and not on the economic loss doctrine, as Perdue had asserted.

---

[4] In *Greg Allen*, our Supreme Court held that "a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." 798 N.E.2d at 175.

[5] Under Indiana's economic loss doctrine, "a defendant is not liable in tort when a plaintiff alleges only 'purely economic loss,' which is financial harm 'arising from the failure of the product or service to perform as expected.'" *Residences at Ivy Quad Unit Owners Ass'n, Inc. v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 983 (Ind. 2022) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005)). However, when damages occur that "either stem from personal injury or are sustained by 'other property[,]' . . . recovery in tort is appropriate, and the economic loss doctrine does not bar recovery." *Id.* (quoting *Gunkel*, 822 N.E.2d at 153–54).

[11] At a hearing held on March 14, 2025, the parties presented their respective arguments on the Employees' motion for judgment on the pleadings. On May 10, 2025, the trial court granted the motion, dismissed with prejudice Perdue's claims against the Employees, and denied as futile Perdue's request for leave to amend the Complaint. In its written order, the trial court emphasized that the economic loss doctrine did not apply to the matter before it, and the court noted that it had been "persuaded that the . . . Employees' briefing does not talk about the economic loss doctrine because [the Employees] are not relying on the economic loss doctrine." (App. Vol. 2 at 35). The court reasoned that *Greg Allen* controlled. The court determined that the alleged negligence on the part of the Employees "consisted solely of their actions within the scope of their authority in negligently carrying out a contractual obligation of their employer[;]" that the economic-loss doctrine was inapplicable; and that "[u]nlike blowtorching a home," a reference to a hypothetical posed in *Greg Allen*, "failure to guard a gate and properly direct traffic is not an inherently tortious activity." (App. Vol. 2 at 32, 33) (internal brackets and quotations omitted).

[12] Perdue sought permission to appeal the trial court's determination under Indiana Appellate Rule 14(B). The trial court certified its order for interlocutory appeal, and this Court accepted jurisdiction over the appeal. Perdue now appeals.

## Decision

Perdue argues that the trial court: (1) erred by granting the Employees' motion for judgment on the pleadings on Perdue's negligence claims; and (2) abused its discretion by denying Perdue's alternative request for leave to amend its Complaint against the Employees. We address each of Perdue's contentions in turn.

### 1. The Trial Court Did Not Err by Granting the Employees' Motion for Judgment on the Pleadings on Perdue's Negligence Claims.

Perdue first argues that the trial court erred by granting the Employees' motion for judgment on the pleadings on Perdue's negligence claims against them. A motion for judgment on the pleadings pursuant to Trial Rule 12(C) attacks the legal sufficiency of the pleadings. *See Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind. Ct. App. 2001), *trans. denied*. In reviewing a trial court's decision on a motion for judgment on the pleadings, we conduct a de novo review. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010).

A ruling on a Rule 12(C) motion must be based solely on the pleadings, as well as any facts of which judicial notice may be taken, and courts must accept the well-pleaded material facts alleged in the complaint as true. *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013), *trans. denied*. "All reasonable inferences are drawn in favor of the nonmoving party and against the movant." *HealthPort Techs., LLC v. Garrison Law Firm, LLC*, 51 N.E.3d 1236, 1238 (Ind. Ct. App. 2016), *trans. denied*.

[16] The test to be applied when ruling on a Rule 12(C) motion is whether, in a light most favorable to the nonmoving party and "with every intendment regarded in [its] favor, the complaint is sufficient to constitute any valid claim." *Brugh v. Milestone Contractors*, 202 N.E.3d 1091, 1094 (Ind. Ct. App. 2023), *trans. denied*. We will affirm the trial court's judgment on a Rule 12(C) motion when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014).

[17] Perdue contends that the Employees' arguments in their motion for judgment on the pleadings "were based on the principles underlying the Economic Loss Doctrine." (Perdue Farms' Br. 18). Therefore, according to Perdue, the "trial court should have analyzed the [Employees'] claims under th[at] . . . Doctrine[,]" and that the trial court erred by concluding that the economic loss doctrine "did not apply at all." (Perdue Farms' Br. 18) (capitalization and bolding omitted).

[18] The Employees, on the other hand, maintain that Perdue "focuses on an argument the Employees have never made" and a doctrine that the trial court did not rely upon when it granted the Employees' motion. (The Employees' Br. 16). The Employees insist that this "case has nothing to do with the Economic Loss Doctrine" and that instead, the proper question is whether the Employees "may be held liable in tort for the allegedly negligent performance of their employer's contractual duties." (The Employees' Br. 17). The Employees argue that the trial court "correctly applied" the reasoning in the *Greg Allen* case

"in concluding that Indiana law forecloses tort claims against a company's employees arising solely from the allegedly negligen[t] performance of the company's contractual obligations to the plaintiff." (The Employees Br. 18).

We agree with the Employees. As explained in more detail below, we conclude that in granting the Employees' motion for judgment on the pleadings, the trial court properly applied the reasoning in *Greg Allen* and correctly determined that the Employees' arguments regarding the matter did not rely upon Indiana's economic loss doctrine. Additionally, even if we apply the economic loss doctrine in this case, Perdue does not prevail.

### A. *Greg Allen Construction Co. v. Estelle*

The parties appear to agree that *Greg Allen* is central to the resolution of the matter before us. They disagree, however, as to how the reasoning in *Greg Allen* should be applied to the matter at hand.

In *Greg Allen*, the homeowners, the Estelles, contracted with a construction company for renovations to their home. The company's president, Greg Allen ("Allen"), signed the contract in his representative capacity and personally performed work on the project. Dissatisfied with the work, the homeowners sued both the company and Allen individually for breach of contract and negligence. The trial court found that Allen was not individually liable. This Court reversed, and our Supreme Court granted transfer and affirmed the trial court. *Greg Allen*, 798 N.E.2d at 172. Our Supreme Court noted that a "defendant's exposure to tort liability is best framed in terms of what the

defendant did." *Id.* at 173. The *Greg Allen* Court concluded that "[t]he whole of the alleged wrong, deficient home improvements, centered on the performance required by the contract[,]" and that "[a]ny duty Allen had to perform his individual duties flowed solely from this contract." *Id.* The *Greg Allen* Court added that because Allen's "negligence consisted solely of his actions within the scope of his authority in negligently carrying out a contractual obligation of the corporation as his employer[,]" and because "[n]othing he did, and therefore nothing the corporation did, constituted an independent tort if there were no contract[,]" the homeowners were "remitted to their contract claim against the principal, and . . . should not be permitted to expand that breach of contract into a tort claim against either the principal or its agents by claiming negligence as the basis of the breach." *Id.*

[22] Further, the *Greg Allen* Court noted that "only the principal, who is a party to the contract, has agreed to perform the obligations of the agreement. To impose 'the same' liability on the agent is to make the agent the promisor when the parties had arranged their affairs to put the principal, and only the principal, on the line." *Id.* Still, the *Greg Allen* Court recognized one limit to this rule, namely that "a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Id.* at 175. The *Greg Allen* Court illustrated the limit with a hypothetical: Allen "could be individually liable to the Estelles if he negligently burned their house down while working with a blowtorch," because "this negligence goes beyond failure to perform up to contractual

standards, and constitutes a tort even if there were no contractual relationship[.]" *Id.* Ultimately, however, the *Greg Allen* Court concluded as follows:

> [H]ere there is no claim of injury that the law would protect if there were no contract. Without a contract, the Estelles would have no other claim for any structure negligently or otherwise constructed, and they do not assert any harm to their persons, no harm to any other property and any invasion of any other protectible interest.

*Id.* at 173-74.

[23] Applying the *Greg Allen* Court's reasoning to the instant case, the dispositive inquiry before us, then, is whether the agents'—here, the Employees'—alleged negligence "would be actionable if there were no contract[.]" *Id.* at 175; *see also U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010) (noting that a defendant's "exposure to tort liability is best framed in terms of what the defendant did").

## B. Perdue Has Failed to Establish that the Employees' Alleged Negligence Would Be Actionable If There Were No Contract.

[24] Perdue contends that Indiana courts "have routinely held that a person can assume a duty sufficient to support a claim in tort, even if that assumption was based on a contractual arrangement." (Perdue's Br. 27). Perdue also argues that the trial court, in granting the Employees' motion for judgment on the pleadings, failed to consider the "blowtorch" hypothetical set out in *Greg Allen*, 798 N.E.2d at 175, which, per Perdue, "unequivocally explain[ed] that an

employee can be liable if it causes damage to other property owned by the party the employer contracted with." (Perdue's Br. 29). We find Perdue's arguments unpersuasive.

Perdue alleged in its Complaint that the Employees owed Perdue "a duty to exercise reasonable care when allowing individuals, including delivery drivers, to enter the Plant[,]" and that the Employees had breached that duty when they "failed to request and review [Richardson's] bill of lading before allowing him to enter the Plant." (App. Vol. 2 at 53). However, what Perdue characterizes as a duty did not exist independent of the Service Agreement. Indeed, the Employees were present at Perdue's security gate—and charged with screening entrants and controlling access to the Plant—*only* because U.S. Security had contractually agreed to furnish security guards "to . . . control foot and vehicular traffic" at the Plant. (App. Vol. 2 at 180). Absent that contract, the Employees owed Perdue no more duty to inspect a third party's bill of lading or to regulate who entered the Plant than a passerby would. And Perdue cites no caselaw establishing a freestanding common-law duty to provide competent security services at a private poultry plant. The source of the duty that Perdue claims is the Service Agreement. And "[w]here[,]" as here, "the source of" a duty "arises from a contract, then tort law should not interfere." *French-Tex Cleaners, Inc. v. Cafaro Co*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008) (cleaned up).

Furthermore, Perdue's reliance on the blowtorch hypothetical is misplaced. The hypothetical illustrates that some conduct "constitutes a tort even if there

were no contractual relationship," where the "negligence goes beyond failure to perform up to contractual standards[.]" *Greg Allen*, 798 N.E.2d at 175. Here, the Employees' alleged negligence did not exceed their failure to perform up to the standards of the Service Agreement. The Employees' acts and omissions—that is, the failure to screen an entrant to the Plant and the decision to admit him to the property and direct him to the tank—were wrongful only because the Service Agreement charged the Employees with controlling access to the Plant. Unlike the duty not to negligently burn down a house while working with a blowtorch, *see Greg Allen*, 798 N.E.2d at 175, no independent legal duty required the Employees to inspect bills of lading or regulate deliveries at Perdue's plant. Thus, Perdue has failed to establish that the Employees' alleged negligence would be actionable absent the Service Agreement.

### C. The Trial Court Properly Applied the Reasoning in *Greg Allen* When Granting the Employees' Motion for Judgment on the Pleadings.

Contrary to Perdue's assertions, the trial court did not err in applying the reasoning in *Greg Allen* when determining that the Employees' motion for judgment on the pleadings should be granted. As the trial court correctly noted in its order granting the Employees' motion, "[t]his case, like *Greg Allen Construction*, is about an alleged failure to perform up to contractual standards." (App. Vol. 2 at 33) (internal quotation marks omitted). And, indeed, this Court has applied the *Greg Allen* reasoning to other fact patterns to the same effect.

For example, in *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635 (Ind. Ct. App. 2015), a panel of this Court applied *Greg Allen* to a mortgagor's negligence

claim against the mortgagee bank, and held that absent "an independent tort that would have existed if there was no contract between the parties," a party may not "expand that breach of contract into a tort claim against either the principal or its agents by claiming negligence as the basis of the breach." *Id.* at 638 (quoting *Greg Allen*, 798 N.E.2d at 173). Likewise, in *Koehlinger v. State Lottery Commission of Indiana*, a panel of this Court determined that the lottery players' negligence and negligent-misrepresentation claims against the State Lottery Commission had failed because they "alleged nothing that would be an actionable tort without the contract they entered into with the Lottery." 933 N.E.2d 534, 542 (Ind. Ct. App. 2010), *trans. denied*.

[29] In *JMB Manufacturing, Inc. v. Child Craft, LLC*, 799 F.3d 780 (7th Cir. 2015), a case we note for instructive purposes, the buyer—that is, Child Craft—pursued the seller's—that is, JMB Manufacturing's—*president* for negligent misrepresentation about whether certain goods conformed to particular specifications. Applying *Greg Allen* and Indiana law, the Seventh Circuit held that "an agent acting within the scope of his authority is not personally liable in carrying out a contractual obligation of the principal[,]" and that the buyer, Child Craft, was "remitted to [its] contract claim against the principal[,]" in that case, JMB Manufacturing. *Id.* at 786 (quoting *Greg Allen*, 798 N.E.2d at 173) (brackets in original, internal quotation marks omitted). The Seventh Circuit reached that same result even though JMB Manufacturing's president had made affirmative misstatements that the goods conformed to specifications,

reasoning that the president had made the misstatements within the scope of his authority as an agent of the seller. *See id.* at 787.

[30] Perdue—like the plaintiffs in *Jaffri* and *Koehlinger*, and like Child Craft in *JMB Manufacturing*—alleges only that the agents, here, the Employees, performed their principal's—that is, U.S. Security's—contractual duties poorly. Thus, Perdue has failed to establish that the Employees' alleged negligence would be actionable if there were no contract. And under *Greg Allen*, Perdue is therefore "remitted to [its] contract claim against the principal"—a claim it is pursuing against U.S. Security in Maryland—and cannot support a tort claim against the Employees. *See Greg Allen*, 798 N.E.2d at 173.

[31] Based upon the foregoing, we conclude that the trial court did not err in granting the Employees' motion for judgment on the pleadings and correctly relied upon *Greg Allen* in doing so. Perdue has failed to establish that the Employees' alleged negligence would be actionable absent the Service Agreement. Thus, Perdue cannot support a tort claim against the Employees.

## D. Even Applying Indiana's Economic Loss Doctrine, Perdue Cannot Prevail on Its Tort Claims.

[32] We also conclude that Perdue's tort claim is barred as a matter of law under the economic loss doctrine. Perdue devotes the greater part of its Appellant's Brief to its argument that the Employees, in their motion for judgment on the pleadings, based their arguments on the economic loss doctrine, without "actually identify[ing] it." (App. Vol. 2 at 199). Thus, as Perdue further

argues, the trial court should have analyzed the negligence claims that Perdue had raised in the Complaint under Indiana's economic loss doctrine and that the trial court erred by failing to do so. Perdue contends that had the trial court analyzed this case through the lens of the economic loss doctrine, "it would have concluded" that the doctrine does not preclude tort recovery and that Perdue "can proceed with its [negligence] claims against" the Employees. (Perdue's Br. at 18). We disagree.

[33] The economic loss doctrine holds that disputes involving only economic losses between parties in privity of contract should be resolved by contract law rather than tort law. *See Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010) ("[T]he economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law").[6] As we previously noted, under Indiana's economic loss doctrine, "a defendant is not liable in tort when a plaintiff alleges only 'purely economic loss,' which is financial harm 'arising from the failure of the product or service to perform as expected.'" *Residences at Ivy Quad Unit Owners Ass'n, Inc. v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 983 (Ind. 2022) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005), *reh'g denied*). "Because these losses are, essentially,

---

[6] *See also Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 736 ("But Indiana courts should recognize that the [economic loss doctrine] rule is a *general* rule and be open to appropriate exceptions, such as (for the purposes of illustration only) lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." (emphasis in original)). None of these exceptions applies to the instant case.

'disappointed contractual or commercial expectations,' contract law—not tort law—is most appropriate for resolving liability." *Ivy Quad*, 179 N.E.3d at 983 (quoting *Gunkel*, 822 N.E.2d at 154). And "our default position in Indiana is that *in general*, there is no liability in tort for pure economic loss caused unintentionally." *Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 736 (emphasis in original).

[34]     Furthermore, "contract is the sole remedy for the failure of a product or service to perform as expected." *Gunkel*, 822 N.E.2d at 152. The policy underlying this rule is that the law should permit the parties to a transaction to allocate the risk that an item sold or a service performed does not live up to expectations. *Id.* at 155.

[35]     "Notably, however, pure economic loss excludes damages that either stem from personal injury or are sustained by 'other property.'" *Ivy Quad*, 179 N.E.3d at 983 (quoting *Gunkel*, 822 N.E.2d at 153-54). "When such damages occur, recovery in tort is appropriate, and the economic loss doctrine does not bar recovery." *Id.* Stated differently:

> The rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise. Typically, damages recoverable in tort from negligence in carrying out the contract will be for injury to person or physical damage to property, and thus "economic loss" will usually not be recoverable.

*Greg Allen*, 798 N.E.2d at 175.[7]

[36] Our Supreme Court has further explained that "[o]ur economic loss doctrine is rooted in the understanding that parties typically allocate the risk of economic loss through a direct, contractual relationship." *Ivy Quad*, 179 N.E.3d at 983. And our Supreme Court summarized the analysis involved as follows: "Thus, when determining whether our economic loss doctrine precludes tort recovery, two considerations guide our review: the type of damages sought and the contractual relationship between the parties." *Id.*

[37] Perdue argues that the economic loss doctrine, as properly applied, does not preclude tort recovery—and Perdue should be permitted to proceed with its negligence claims against the Employees—because Perdue suffered damage to "other property" and Perdue is not in contractual privity with the Employees. (Perdue's Br. 25). To resolve this matter, we first look to the contractual relationship between the parties and then engage in an analysis of the type of damages sought.

---

[7] We take this opportunity to note that we need not resolve the parties' debate over whether *Greg Allen* "is" an economic-loss case, a debate that consumed much of the parties' briefing and argument below. (*See* Tr. Vol. 2 at 10-12, 22-26). Our Supreme Court has cautioned, in dicta, that "[p]utting the issue in terms of the source of the duties of the agent may lead to overstating the agent's non-liability, and is largely tautological," and that "[a] defendant's exposure to tort liability is best framed in terms of what the defendant did." *Greg Allen*, 798 N.E.2d at 173, 175; *accord U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010) (reaffirming this framing). Whether labeled the *Greg Allen* reasoning or the economic loss doctrine, the operative inquiry is the same, that is, whether the alleged negligence would be actionable in the absence of the contract, which in turn ordinarily depends on whether the alleged negligence caused injury to person, or damage to property other than the contracted-for work. *See Greg Allen*, 798 N.E.2d at 175; *c.f.*, *Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 731 (damage from a defective service "may be recoverable under a tort theory if the defect causes personal injury or damage to other property").

[38] Here, the parties appear to agree that there is no contractual privity between Perdue and the Employees, which lends support for Perdue's argument that the economic loss doctrine does not preclude tort recovery. However, our analysis does not end there, as we next turn to an examination of the type of damages sought by Perdue. The "other property" exception under the economic loss doctrine necessitates identifying "the product purchased by the plaintiff," and then asking whether the alleged damage extends beyond that product or service or is instead "an integral part of" it. *Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 731-32; *see also Gunkel*, 822 N.E.2d at 154-55.

[39] In *Gunkel*, the Gunkels contracted with Renovations, Inc. ("Renovations") for the construction of a new home. Six months later, in a separate transaction, the Gunkels hired another contractor, J & N Stone, Inc. ("J & N"), to attach a stone façade to the new home. Soon after the façade was installed, moisture problems arose, and the Gunkels claimed that "walls, ceilings, floors, drywall, carpet, and carpet padding were damaged." *Gunkel*, 822 N.E.2d at 151. The Gunkels sued Renovations and J & N on claims of breach of contract and negligence. J & N sought summary judgment on the ground that the Gunkels sought purely economic damages, which were not available under a negligence theory. The trial court granted summary judgment for J & N.

[40] Applying the economic loss doctrine, our Supreme Court on transfer concluded that "[t]he product or service purchased from J & N was the façade added to the exterior of the Gunkels' home by J & N. J & N installed the façade under an arrangement with the Gunkels that was independent of the contract with

Renovations to build the home." *Gunkel*, 822 N.E.2d at 156. Therefore, the "economic loss rule preclude[d] tort recovery for damage to the façade itself," but the other property rule *did permit* tort recovery for damage to the home, and its parts, caused by the allegedly negligent installation of the façade. *Id.* at 156–57.

In *Indianapolis-Marion County Public Library*, the library contracted with multiple entities to renovate and expand its downtown Indianapolis library facility. After a significant amount of construction had occurred, the library discovered that the accompanying parking garage contained construction and design defects that ultimately cost the library tens of millions of dollars to cure. The library sued the various architects, general contractors, and engineers, alleging negligence. The various defendants argued that the negligence claims against them were barred by the economic loss doctrine. Citing *Gunkel*, and in the context of construction, our Supreme Court reasoned that

> "[o]nly the supplier furnishing the defective property or service is in a position to bargain with the purchaser for allocation of the risk that the product or service will not perform as expected. If a component is sold to the first user as a part of the finished product, the consequences of its failure are fully within the rationale of the economic loss doctrine. It therefore is not 'other property.'"

*Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 731 (quoting *Gunkel*, 822 N.E.2d at 154). Our Supreme Court found that the product the library had purchased was a "complete renovation and expansion of all the components of

its facility as part of a single, highly-integrated transaction. *Id.* The Court held that

> the product or service purchased from the Defendants was an integral part of the entire library construction project, not independent from it. Any damages alleged to have resulted from the Defendants' negligence were to the "product" the Library purchased, not to "other property." The economic loss rule applies.

*Id.* at 732.

[42] Perdue asserts that the chemical reaction damaged the Plant's equipment, forced a multi-day shutdown to clean and salvage the equipment, and ultimately caused approximately $1.29 million in damages. The service Perdue purchased at the outset was the protection of the Plant—that is, security guards to "prevent theft, fire and vandalism and control foot and vehicular traffic." (App. Vol. 2 at 180). The expectation here was that the Employees would provide competent security for the Plant. The Employees failed to check Richardson's bill of lading, and the damage that resulted from that failure amounted to a disappointed contractual expectation of the security services that should have been provided.

[43] The damage Perdue alleges, however, is damage to Perdue's very own plant that the Employees had been assigned to protect per the Service Agreement. Like the structurally unsound garage that was "an integral part of the entire library construction project" in *Indianapolis-Marion County Public Library*, the harm here is to the integral subject of the bargained-for service—the Plant

itself—not to "other property" independent of it. *See Indianapolis-Marion Cnty. Pub. Lib.*, 929 N.E.2d at 731-32. The manifestation of the very risk a service was engaged to protect against, even in light of catastrophic results, does not amount to the kind of collateral, independent damage to other property that converts a contract dispute into a tort.

[44] Indeed, the Service Agreement contained the following provisions regarding indemnification and limits of liability, reading in relevant part as follows:

> 6.1    Contractor shall indemnify, hold harmless, and defend Perdue and its subsidiaries, officers, directors, employees, and agents ("Indemnitees") against any and all claims and accidents, costs of defense (including reasonable attorney's fees and costs), damages, and expenses ("Damages") arising out of any loss, personal or bodily injury, death, and/or damage suffered by any person or property that arises from or relates to Contractor's performance under the Agreement and for any failure of its duties herein. Further, it is the specific intent of the parties that the Contractor is obligated to indemnify, hold harmless, and defend Perdue (i) against any and all claims that may arise out of an injury to Contractor's employees, agents, or representatives while performing Services, except where such injury is proximately caused by a willful or negligent act or omission of Perdue[.]

(App. Vol. 2 at 75). Thus, U.S. Security contemplated—and the parties allocated—the risk associated with the Employees' failure to perform up to the standards of the Service Agreement. *See Gunkel*, 822 N.E.2d at 155.

[45] In this case, the damage Perdue alleges is damage to the plant that the Employees had been assigned to protect per the Service Agreement, and not to other property. As such, the economic loss doctrine precludes tort recovery against the Employees.

[46] In sum, accepting Perdue's allegations as true, the Employees owed Perdue no duty independent of the Service Agreement, and the negligence Perdue alleges would not be actionable absent that contract. Under *Greg Allen*, Perdue cannot maintain its negligence claims against the Employees, and applying the economic loss doctrine, the damage to the Plant was not damage to other property, thus barring Perdue's recovery of tort claim damages against the Employees.

[47] Here, it is clear from the pleadings that Perdue cannot in any way succeed under the operative facts and allegations made herein. *See Veolia Water Indianapolis*, 3 N.E.3d at 5. We, therefore, conclude that the trial court did not err by granting the Employees' motion for judgment on the pleadings on Perdue's negligence claims.

## 2. The Trial Court Did Not Abuse Its Discretion by Denying Perdue Leave to Amend the Complaint.

[48] Finally, Perdue argues that the trial court "wrongly denied" its motion to amend its Complaint to address any deficiencies in its economic loss doctrine

arguments.[8]  (Perdue's Br. 30).  Perdue maintains that the trial court erred in denying Perdue leave to amend the Complaint, because the court failed to find that "prejudice would result to the [Employees,] as required under Indiana law," and that, instead, the court wrongly "reason[ed] solely that [the] amendment would be futile on the basis that [the court had] granted" the Employees' motion for judgment on the pleadings.  (Perdue's Br. 30).  We disagree.

[49]  "Indiana Trial Rule 15(A) provides that '[a] party may amend his pleading once as a matter of course' if within a certain time frame." *Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010) (quoting Ind. Trial Rule 15(A)), *trans. denied.*  "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires."  Ind. Trial Rule 15(A).  "Although amendments to pleadings are to be liberally allowed, the trial court retains broad discretion in granting or denying amendments to pleadings." *Hilliard*, 927 N.E.2d at 398.  We will reverse a trial court's ruling on a motion to amend only upon a showing of an abuse of that discretion, which occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*  This Court reviews whether a trial court's ruling on a motion to amend is an abuse of discretion by evaluating a

---

[8] We decline Perdue's invitation to find that the Employees have waived any argument to the contrary.

number of factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* (cleaned up).

[50] Perdue requested leave to amend the Complaint and asked the trial court to "permit it to file a Second Amended Complaint to more particularly plead factual allegations against the . . . Employees as it relates to the damage suffered to other property that the [trial court] believe[d] may be lacking." (App. Vol. 2 at 214). The trial court denied the request because any amendment "would be an exercise in futility[.]" (App. Vol. 2 at 37). The trial court "decline[d] to grant leave to [Perdue] to amend its Complaint to add arguments that are legally futile and which seek to address arguments never raised by" the Employees, that is, arguments related to the economic loss doctrine. (App. Vol. 2 at 37).

[51] First, we note that Perdue did not tender a proposed amended complaint. Without it, we cannot know the manner in which Perdue might have "more particularly" pled the factual allegations relating to the alleged damage to other property. (App. Vol. 2 at 214). Second, and more importantly, as we noted above, under *Greg Allen*, Perdue cannot maintain its negligence claims against the Employees, and that even if we were to apply the economic loss doctrine, the damage to the Plant was not damage to other property, thus barring Perdue's recovery of tort claim damages against the Employees. As such, and as the trial court concluded, any proposed amended complaint would have been

an exercise in futility. Therefore, the trial court did not abuse its discretion by denying Perdue leave to amend the Complaint.

[52] Further, Perdue argues that the trial court erred by denying it leave to amend the Complaint without expressly finding that granting Perdue such leave would have resulted in prejudice to the Employees. However, having determined that any amendment to the Complaint would have been an exercise in futility, the trial court was not required to find that granting Perdue leave to amend would have resulted in undue prejudice to the Employees. *See Hilliard*, 927 N.E.2d at 398. And Perdue cites no caselaw to the contrary. Undue prejudice is but one of a number of factors that this Court evaluates to determine whether a trial court's ruling on a motion to amend is an abuse of discretion. *See id.* Therefore, the trial court did not abuse its discretion in this regard.

[53] Based upon the foregoing reasons, we conclude that the judgment of the trial court is affirmed.

[54] Affirmed.

Bradford, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Danny E. Glass
Adam S. Glass
Fine & Hatfield
Evansville, Indiana

Gregory L. Mast
Stephen A. Kahn
Fields Howell, LLP
Atlanta, Georgia


ATTORNEYS FOR APPELLEES JENNIFER FREEMAN, BRIAN HILL & CARL NELSON

Edward M. O'Brien
Wilson Elser Moskowitz Edelman & Dicker LLP
Louisville, Kentucky